CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2015 MAY -1  PM 4:48
DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § § | 2:15-CR-0014 |
| KYLE ANDREW ADAIR | | |

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART MOTION TO SUPPRESS STATEMENTS

Came for consideration the motion to suppress filed March 16, 2015, by defendant KYLE ANDREW ADAIR. A hearing was held March 26, 2015 with Texas Department of Public Safety (DPS) Agent Juan Medrano testifying. After consideration of the pleadings, the evidence presented at the hearing, and the arguments of counsel, the Magistrate Judge is of the opinion defendant's motion to suppress statements should be granted in part and denied in part.

### I.
### FACTUAL BACKGROUND

On January 31, 2015, law enforcement officers from several agencies conducted an undercover operation code named "Red Riding Hood." This operation targeted people who were soliciting minors over the internet. One of the officers, Gabriel Arriaga of the West Texas A&M University Police Department posed as a fourteen-year-old using the pseudonym "Tristan Edwards." Edwards/Arriaga posted an advertisement on the website Craigslist and on January 31, 2015, defendant ADAIR, using the name "Awesome Friends 10," engaged in an online chat with

Edwards/Arriaga. The two of them agreed to meet in the parking lot of a restaurant, with ADAIR telling Edwards/Arriaga he would be arriving in a purple taxi.

When defendant ADAIR did in fact arrive at the restaurant in a purple taxi, he was apprehended and transported to the Amarillo DPS office. ADAIR was placed in an interview room and met with DPS Agent Juan Medrano. No *Miranda* warnings were read to defendant ADAIR at that time. Agent Medrano began questioning Adair asking "booking" type questions but, after a few minutes the Agent asked questions about the offense. Defendant ADAIR did not make a full confession during this initial unwarned interrogation, but he did make incriminating statements, including admissions that he knew he was communicating with a 14-year-old and that the username used to speak with Edwards/Arriaga was his. (Motion to Suppress pgs. 6, 8). After approximately 14 minutes into the interview, Agent Medrano stopped and read the defendant his *Miranda* rights. Defendant ADAIR acknowledged he understood his rights and the interview continued. Defendant's post-*Miranda* statements also did not constitute a full confession with some of ADAIR's post-*Miranda* statements being incriminating and some exculpatory. ADAIR eventually asked for an attorney, at which time the interview was completely terminated.

## II.
## ADMISSIBILITY OF STATEMENTS

Defendant seeks to suppress the statements he made while in custody (1) prior to being Mirandized, and (2) after being Mirandized. The government concedes the pre-*Miranda* statements are inadmissible in its case-in-chief, and the motion to suppress should be GRANTED as to the pre-*Miranda* statements. The undersigned does not make any recommendation regarding the admissibility of these statements for other purposes, such as impeachment pursuant to *Harris v. New*

*York*, 401, U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), or any other potential use since that issue is not ripe and would be a matter to be addressed at trial. The remaining and only contested issue is whether the statements made by defendant after *Miranda* warnings were given are admissible during the government's case in chief.

The initial question is the applicability of *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). If *Missouri v. Seibert* does not apply to the facts of this case, then the motion to suppress defendant's post-*Miranda* statements should be DENIED.

The Fifth Circuit, in *United States v. Nunez-Sanchez* 478 F.3d 663 (5th Cir. 2007), addressed the application of *Missouri v. Seibert*.

> In *Missouri v. Seibert*, Justice Kennedy provided the fifth vote in a 5–4 decision, and decided the case on narrower grounds than the majority. " 'It is well established that when we are confronted with a plurality opinion, we look to that position taken by those Members who concurred in the judgments on the narrowest grounds.' Therefore, we find *Seibert* 's holding in Justice Kennedy's opinion concurring in the judgment." *United States v. Courtney*, 463 F.3d 333,338 (5th Cir. 2006) (internal citations omitted).
>
> We recently interpreted the relationship between *Seibert* and *Elstad* by stating, " *Seibert* requires the suppression of a post-warning statement only where a deliberate two-step strategy is used and no curative measures are taken; where that strategy is not used, '[t]he admissibility of postwarning statements [ ] continue[s] to be governed by the principles of *Elstad*.' " *United States v. Courtney*, 463 F.3d 333,338 (5th Cir. 2006) (citing Seibert, 542 U.S. at 622, 124 S.Ct. 2601) (modifications in original).

*Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) focused on whether a defendant's statements were voluntary and held that custodial statements given after *Miranda* warnings are administered are admissible even if those post-*Miranda* statements follow earlier statements made without *Miranda* warnings. In *Missouri v. Seibert*, the Supreme Court found a narrow exception to the *Oregon v. Elstad* opinion and held that under the particular facts of that

case, a midstream *Miranda* warning was ineffective. Specifically, the *Seibert* court determined a two-step interrogation that was intentionally employed to avoid *Miranda* constituted an exception to *Oregon v. Elstad.*

Here, there is simply no evidence of a deliberate two-step strategy as defined by Justice Kennedy. Justice Kennedy stated he would apply a narrower test than the one propagated by the plurality opinion, which would have "applie[d] to every two-stage interrogation." Thus, Justice Kennedy distinguished his test from the plurality opinion by holding that in order for a defendant's statements to be suppressed pursuant to *Seibert*, the defendant must show the interrogator "utilized a deliberate, two-step strategy, predicated upon violating *Miranda*." *Id.* at 621, 124 S.Ct. at 2615. Unless the police use a deliberate, two-step strategy <u>as defined by Justice Kennedy</u>, *Seibert* does not control.

Agent Medrano's testimony reflects no such strategy. He testified his failure to initially give *Miranda* warnings was an oversight. He stated he was distracted by an unpleasant smell, and because he did not have or did not think he had a *Miranda* warning form as required by DPS. He explained he began his interview asking only "booking" type questions but inadvertently moved into asking substantiative questions. There is no evidentiary basis to support a finding that Agent Medrano engaged in a calculated two-step strategy. While defendant, on cross-examination, elicited testimony from Agent Medrano indicating Agent Medrano was aware he had asked questions which required *Miranda* warnings and also elicited testimony demonstrating Agent Medrano could have procured a *Miranda* warning sheet in a more expeditious manner, this merely shows Agent Medrano deviated from his routine practice and/or that in hindsight he recognized his oversight. Defendant has not shown Agent Medrano acted to further a deliberate two-step strategy predicated upon

violating *Miranda* as would be required under *Seibert*.

Defendant ADAIR acknowledges that *Seibert* is implicated when the government <u>deliberately</u> employs a two-step strategy and contends the evidence admitted at his suppression hearing demonstrates such a strategy was used. Defendant, however, premised his argument on Justice Souter's plurality opinion. (*See* pg. 4 of Defendant's Supplemental Brief). Under Fifth Circuit law, Justice Souter's opinion does not control. Instead, as discussed above, Justice Kennedy's opinion controls and defendant ADAIR has not presented anything to show ADAIR's statements are inadmissible under Justice Kennedy's opinion. Defendant has not shown Agent Medrano regularly engaged in a two-step interrogation strategy or even did so on any prior occasion. Nor has defendant shown DPS has a policy to use a two-step strategy. Although defendant argues that the Fifth Circuit has looked to factors similar to those set out in the *Seibert* plurality opinion, he does not cite the Fifth Circuit cases in which those factors were applied. Defendant does cite two Fifth Circuit cases,[1] but neither of those cases address the issue of what constitutes a deliberate two-step strategy except by reference to *Seibert*.

In addition, the tactic described by Justice Kennedy in *Seibert* is one in which "[t]he postwarning interview resemble[s] a cross examination. . . [and] the officer confront[s] the defendant with her inadmissible prewarning statements and pushe[s] her to acknowledge them." *Seibert*, 542 U.S. at 621. No such "pushing" occurred in this case. Defendant ADAIR spent most of the pre-warning interview disputing Agent Medrano's characterization of defendant's actions, with ADAIR claiming he never intended to have sex. At most, defendant's pre-warning statements

---

[1] *United States v. Delgado-Arroyo*, 2009 WL 5100505 (5th Cir. Dec. 22, 2009); *United States v. Nunez-Sanchez*, 478 F.3d 663, 668 (5th Cir. 2007).

identified defendant as the person who had sent the communications at issue and established that defendant believed the victim was a minor. This is entirely different from the facts in *Seibert*, where, pursuant to a <u>policy</u> the defendant was interrogated without warnings, made critical admissions, and was then pressed to make the same admissions after being warned. Here, there was no retreading of the same ground in order to obtain a "warned" confession. There is nothing in the interrogation that objectively indicates Agent Medrano was using a deliberate, two-step strategy.

Since no prohibited two-step strategy was used, there is no issue regarding curative measures. Unless defendant demonstrates a two-step strategy was utilized to circumvent *Miranda*, it is not necessary to address the absence of curative measures. The fact that no curative measures were taken is not determinative.

## VOLUNTARINESS

The remaining issue is whether defendant's statements were voluntary. Under *Elstad*, statements are not involuntary or coerced merely because the statements were given without proper *Miranda* warnings. *Elstad*, 470 U.S. at 308, 105 S.Ct. at 1292 (holding that unwarned statements are excluded under a prophylactic, bright line rule in *Miranda*, not because such statements are inherently involuntary or coerced). "A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id.* at 314, 105 S.Ct. at 1296. If both the pre-warning and post-warning statements were voluntary, the post warning statements are admissible.

There is no evidence defendant ADAIR's statements were involuntary. Agent Medrano's interaction with defendant ADAIR was cordial and polite. Agent Medrano never raised his voice, and there is no evidence he threatened ADAIR. Defendant ADAIR freely asked questions, and

Agent Medrano answered defendant's questions directly. While defendant has shown he was malodorous during the interrogation and was not allowed to clean himself, there was no evidence this caused defendant to feel coerced or rendered his statements involuntary.

Defendant, on cross-examination, demonstrated through the testimony of Agent Medrano that he was aware that defendant claimed to have mental disabilities. Presumably, such testimony was elicited for the purpose of challenging the voluntariness of defendant's statements. No specific evidence, expert or otherwise, except defendant's hearsay statements to Medrano, was offered showing defendant suffered from any mental disabilities. Even assuming defendant suffered from some or all of the disabilities he claimed, there was no evidence of the degree of those disabilities or that they rendered him incompetent or rendered his statements involuntary. From a review of the audio recording played during the suppression hearing, it appears defendant understood the questions asked, was able to respond to the questions, and was able to engage with Agent Medrano. Defendant made statements and asked questions demonstrating he understood what was happening and the subject matter being discussed. There is no evidence defendant's mental condition rendered his statements involuntary.

All of the evidence presented shows Agent Medrano conducted a calm interrogation and that defendant was cooperative. Since no deliberate two-step interrogation strategy has been shown, *Seibert* does not apply. Since defendant ADAIR's statements both before and after Miranda warnings were given were not coerced but were voluntary, the motion to suppress as it relates to statements given after *Miranda* warnings were administered should be DENIED.

## III.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the motion to suppress statements filed by defendant KYLE ANDREW ADAIR be GRANTED as to any statements made prior to being Mirandized and DENIED as to all statements made after the *Miranda* warnings were administered.

## IV.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___1st___ day of May 2015.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)©, or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely

file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).